Argued and submitted June 4, reversed October 23, 1979

STATE OF OREGON,
*Respondent,*
*v.*
MARK ALLEN MATSEN,
*Petitioner.*

(TC 77-09-13613, CA 10520)

(consolidated cases)

STATE OF OREGON,
*Respondent,*
*v.*
TYRRELL LEE WILSON, *Petitioner.*

(TC 77-09-13612, CA 10429)

(SC 26072)

601 P2d 784

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief were Gary D. Babcock, Public Defender, and S. Randall Johnson, Law Student, Salem.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

LENT, J.

**LENT, J.**

The defendants were charged with criminal activity in drugs, former ORS 167.207.[1] The trial court denied their respective motions to suppress evidence[2] seized by the police in a warrantless entry of the dwelling where the defendants were present. The defendants were convicted and upon their consolidated appeal the Court of Appeals affirmed. *State v. Matsen/Wilson,* 38 Or App 7, 588 P2d 1284 (1979). This court allowed review, ORS 2.520; 286 Or 149 (1979).

Since there is supporting evidence, we are bound by the following material, historical facts. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

On September 9, 1977, the police received information that substantial drug traffic was being carried on at the residence in question. During the next two weeks, the police had contacts with several informants and set up surveillance of the house. By September 15, the police had determined the identities of defendants Matsen and Wilson, who were living at the house and were alleged drug distributors. The police also learned that a drug supplier visited the house at least once a week; however, at that time the police knew only that he was called "Max" or "Pete." It was eventually ascertained that his name was Maxwell Pete Tolomei. By September 15, the police were convinced of the informants' reliability and believed they had probable cause to secure a search warrant; however, they desired to catch Tolomei in the act of making a delivery. The police set up street surveillance between September 15 and 21 and observed Tolomei visiting the premises on at least two or three occasions. Certain police

---

[1] ORS 167.207 was repealed, effective July 1, 1978. Or Laws 1977, ch 745, § 56.

[2] Neither defendant's trial court file contains an order denying his motion to suppress. The transcript of proceedings before the trial court discloses that the trial judge did pronounce from the bench: "And therefore I deny the motion to suppress * * *." All parties and the Court of Appeals have treated these cases as if orders denying the respective motions had been duly made and entered. We shall do the same.

officers considered getting search warrants during this time, but the decision was made to gather more information about Tolomei's identity. The police knew, however, that a "John Doe" warrant could have been obtained, based on the information gathered and corroborated at that time.

At about 2 p.m. on September 23, the police received word through their informants that Tolomei would be delivering a large load of marijuana to the residence. Sometime after 2:30 p.m. Tolomei entered the residence and, while he was still there, at 3 p.m. four police officers entered the residence and "froze the premises."[3] The defendants were handcuffed and placed on the floor. The police officers did not inform the defendants that they were under arrest.[4]

At about 5:30 p.m., some two and one-half hours after entry, the police began preparation of an affidavit for a search warrant, and at 6:30 p.m.[5] the search warrant thereby obtained arrived at the premises. At that time a complete search of the residence was conducted. The items seized constituted the evidence used by the state against these defendants upon the trial court's denial of the defendants' motions to suppress the evidence.

The Court of Appeals affirmed the trial court's finding that the warrantless entry was based on probable cause and was justified by exigent circumstances. The Court of Appeals held that the unchallenged information obtained by the police was abundantly sufficient to constitute probable cause. The court also

---

[3] *See* discussion, *infra,* as to the meaning and significance of this term.

[4] Of course, this is a seizure for constitutional purposes. *State v. Groda,* 285 Or 321, 325, 591 P2d 1354 (1979). *Cf.,* ORS 133.005(1).

[5] This is the evidence most favorable to the plaintiff and, therefore, most supportive of the trial judge's disposition of the motion to suppress. There is evidence from one of the officers, however, that the warrant did not arrive at the premises until 7:50 p.m.; moreover, the affidavit in support of the warrant shows that it was subscribed and sworn to before the magistrate at 7:30 p.m., and the warrant shows on its face that it was issued at 7:30 p.m.

held that exigent circumstances existed, because the police could not be certain at any given time of the presence or quantity of drugs unless the supplier was making a delivery; therefore, when Tolomei arrived, a warrantless search was necessary to prevent loss of evidence. 38 Or App at 10-11.

We are bound by the trial court's finding of what actually happened. *Ball v. Gladden, supra.* Our function on review is limited to determining whether these historical facts support the trial court's findings of probable cause and exigent circumstances which must meet state and federal constitutional guarantees. *State v. Peller,* 287 Or 255, 260, 598 P2d 684 (1979); *State v. Warner,* 284 Or 147, 156-158, 585 P2d 681 (1978).

### Constitutional Claims

■ Defendants Matsen and Wilson resided at the premises that were searched. Matsen and Wilson as buyers each had a possessory interest in the contraband seized. They chose to conduct their sale inside the residence. Similar facts have been held to give such persons a claim to privacy from government intrusion. *See Jones v. United States,* 362 US 257, 80 S Ct 725, 4 L Ed 2d 697 (1960).[6] *Cf., Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387 (1978). Therefore, each defendant may properly claim that the search and seizure has infringed an interest protected by the applicable constitutional provisions. Or Const. Art I, § 9; U. S. Const., Amend. IV; *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974).

### Probable Cause

■ The trial court suppressed certain information which was found to be the product of unlawful police

---

[6] As was noted in *Rakas v. Illinois,* 439 US 128, 99 SCt 421, 58 LEd2d 387 (1978), *Jones v. United States,* 362 US 257, 80 SCt 725, 4 LEd2d 697 (1960), was concerned with an interpretation of Federal Rule of Criminal Procedure 41(e). In *Alderman v. United States,* 394 US 165, 173 n. 6, 89 SCt 961, 22 LEd2d 176 (1969), the court held that Rule 41(e) conforms to the general standard and is no broader than the constitutional rule. See *Rakas,* 58 LEd2d at 394.

surveillance; however, the trial court found sufficient independent and unchallenged evidence to constitute probable cause for the police to search. The evidence clearly supports the trial court's finding that the police had ample information to constitute probable cause to believe that contraband was located in the residence and therefore subject to appropriate seizure. The trial court's finding as to probable cause is affirmed.

*Exigent Circumstances*

■ Probable cause by itself justifies only the issuance of a warrant. Or Const. Art I, § 9; *State v. Olson,* 287 Or 157, 598 P2d 670 (1979). The state has the additional burden to justify the validity of the warrantless search. ORS 133.693(4). Warrantless entries to effect an arrest or search are *per se* unreasonable. *State v. Olson, supra,* (warrantless entry to arrest); *State v. Peller, supra,* (warrantless entry to search). Although "exigent circumstances" may validate a warrantless search, that justification is an exception to the search warrant requirement. *See, e.g., State v. Peller, supra.*

■ The trial court found that the warrantless entry was justified by these "exigent circumstances": the police were trying to catch Tolomei, the alleged supplier, and neither he nor the drugs were likely to be on the premises for long. We noted in *State v. Peller, supra,* 287 Or at 262, that the theory underlying the exigent circumstances exception is one of "practical necessity."

■ The record discloses that by September 15, the police were well aware of Tolomei's frequent deliveries, through numerous tips from reliable informants and by their own observations. The police objective was to catch Tolomei in the act of making a delivery to the distributors. The police were aware, however, that a search warrant could be obtained which would be good for five days, and could be extended for an additional five days. The events of September 23 were not in any way unforeseeable or exceptional. Tolomei was making one of his frequent

deliveries at the dwelling which had been under surveillance for more than two weeks. As we stated in *State v. Fondren,* 285 Or 361, 367, 591 P2d 1374 (1979), "[T]he officer cannot create exigent circumstances by his own inaction." The police desire to catch Tolomei in the act is not the kind of "necessity" to justify a warrantless search.

 More specifically, the evidence does not support the trial court's finding of exigent circumstances because the state failed to prove that destruction of contraband or the escape of the defendants was imminent. The fact that drugs are usually of a destructible nature, and the fact that suspects are likely to run out the back door when police enter the front door does not ipso facto create exigent circumstances. *Cf., State v. Peller, supra,* 287 Or at 264; W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment 440-441 (1978). Nor does the fact that the deliveries were sporadic mean that when Tolomei did arrive, exigent circumstances then arose. The police cannot weave together a web of information, then claim exigent circumstances when the suspect arrives and can conveniently be snared. The warrant process is more than an inconvenient formality. As stated more than thirty years ago by the Supreme Court in *Johnson v. United States,* 333 US 10, 13-14 (1948):

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

We cannot hold that these circumstances are exigent, because to do so would expand this exception to swallow the warrant requirement. The convictions must be reversed.[7]

---

[7] *Cf. G. M. Leasing Corp. v. United States,* 429 US 338, 358-359, 97 SCt 619, 50 LEd2d 530 (1977).

■ The state has argued, however, that the case must be remanded to allow the trial court an opportunity to determine whether the search was conducted pursuant to the warrant. The record discloses that the trial judge addressed this issue, and we agree with his statement that the subsequent securing of a search warrant does not affect the validity of the original warrantless entry.

■ Furthermore, the act of "securing the premises" without a warrant does not validate the warrantless entry and seizure of evidence. The lawfulness of the procedure of "freezing the premises" to preserve evidence has not been addressed by this court. The Court of Appeals confronted a similar fact situation in *State v. Drouhard,* 31 Or App 1083, 1087, 572 P2d 331 (1977), *rev den* 282 Or 189 (1978). The court stated, "The act characterized as 'securing' was a search and seizure and must be justified accordingly." In his recent treatise on the Fourth Amendment, Professor LaFave, *ibid,* discusses the "impoundment alternative" to a warrantless search in order to prevent loss of evidence. He observes that the constitutionality of this procedure is undecided and concludes that, "[I]n the last analysis, the question will probably be resolved upon the basis of a court's assessment of just how great an intrusion is involved in the impoundment procedure." W. LaFave, *supra* at 454.

■ Any impoundment is a seizure of the person if a citizen is detained against his will by an officer. *See State v. Warner, supra,* 284 Or at 161. Although ORS 161.615 provides the framework for a permissible on the street detention, we have no statute authorizing entry of premises and detention of persons in this situation.[8] We therefore look to relevant case law for guidance as to the lawfulness of this procedure.

---

[8] ORS 146.107(4), authorizing a medical examiner or district attorney to impound premises when there is a body or evidence of the circumstances of death requiring investigation, is concededly not applicable.

■ The United States Supreme Court in *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970), stated that it was permissible to impound an automobile and make a later search pursuant to a warrant, but the Court warned that "[T]he same consequences may not follow where there is unforeseeable cause to search a house." 399 US at 52. The Sixth Circuit has considered facts similar to this case and has rejected the lawfulness of such an impoundment procedure. *See United States v. Hayes,* 518 F2d 675 (6th Cir 1975); *United States v. Griffin,* 502 F2d 959 (6th Cir 1974). We conclude that "securing the premises" prior to arrests and without a warrant is not lawful absent unforeseen and compelling circumstances which would independently justify a warrantless entry and search. *Cf., United States v. Picariello,* 568 F2d 222 (1st Cir 1978). This conclusion is supported by the Supreme Court's recent focus on a person's "legitimate expectations of privacy," *Arkansas v. Sanders,* 442 US 753, 99 S Ct 2586, 61 L Ed 2d 235 (1979); *Rakas v. Illinois, supra,* which are acknowledged to be greatest with respect to a person's dwelling. *See, e.g., United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977). Accordingly, we hold that the trial judge was correct when he stated:

"I do not believe there is any room for a separate doctrine of freezing the premises. I think the term is an anomaly and simply adds nothing to the authority of the police officers."

Because no exigent circumstances existed and the warrantless entry cannot otherwise be justified, the decisions of the Court of Appeals and of the trial court are reversed.