Submitted on record and briefs April 28, reversed and remanded for new trial
September 6, 1995, petition for review allowed March 6, 1996 (322 Or 644)

STATE OF OREGON,
*Respondent,*

*v.*

KARI REIN,
*Appellant.*

(92CR0573; CA A81745)

901 P2d 982

Kari Rein filed the brief *pro se*.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General, filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Defendant appeals her convictions for manufacturing a controlled substance, possession of a controlled substance and endangering the welfare of a minor. ORS 475.992; ORS 163.575. She argues that the court erred in denying her motion to suppress. We reverse and remand for a new trial.

The facts are largely undisputed. On October 21, 1992, Deputy Sheriff Darby and Reserve Deputy Hosier were attempting to serve citations to appear on two persons not involved in this case. The deputies drove to the address listed on the citations, which was a large compound with several residences in a wooded area. The deputies parked their car near a small clearing containing two buildings. They approached the first building and, while knocking on the door of that building, heard what sounded like several voices coming from the other building. The deputies also saw buckets, chicken wire, tarps and compost concealed just beneath the tree line, which, in their experience, suggested marijuana cultivation. The deputies received no answer at the first building and turned to approach the second building. As they did so, defendant stepped out of the second building and walked alongside a large vegetable garden towards the deputies. When she opened the door, the deputies detected an "overwhelming" odor of fresh marijuana.

Defendant asked the deputies what they were doing there and Darby replied that they were there to serve the citations. At that time, the deputies also smelled fresh marijuana on defendant's person. Defendant spoke briefly with Darby, telling him that the people he was looking for did not live there and she directed the deputies to their residence. Hosier continued to speak with her while Darby continued toward the second building. Hosier testified that, while he was talking to defendant, he heard what "sounded like voices again."

Jungwirth[1] then stepped out of the second building and shut the door behind him. Jungwirth asked Darby what he was looking for. Darby again smelled a strong odor of fresh

---

[1] Jungwirth was also convicted of the same crimes as defendant at a consolidated trial. His convictions are the subject of a separate appeal. *See State v. Jungwirth*, 136 Or App 546, 901 P2d 982 (1995).

marijuana and asked Jungwirth if anyone else was inside. Jungwirth then asked Darby if he had a warrant. Darby and Jungwirth exchanged the same questions a few more times, with neither one answering the other's question. Darby then tried to push Jungwirth out of the way. Jungwirth resisted and Darby applied a compliance hold, took Jungwirth to the ground and handcuffed him. In the meantime, defendant moved in front of the door and told Darby that he could not enter their home without a warrant. Darby forced her to the ground and handcuffed her. While defendant and Jungwirth were handcuffed on the ground, Darby opened the door and immediately saw marijuana plants hanging to dry. At that point, Darby testified, neither defendant nor Jungwirth was "free to go."

Darby requested a search warrant by radio based on all of his observations, including the marijuana hanging in defendant's home. Another deputy brought the warrant to the premises, where it was executed. Defendant was then arrested and charged with manufacturing a controlled substance, possession of a controlled substance and endangering the welfare of a minor.[2]

Before trial, defendant moved to suppress the evidence discovered by Darby after he opened the door. The state argued that the search was justified by the officers' safety concerns and by the possibility that evidence might be destroyed.[3] The trial court agreed:

"I think in terms of the officer safety issue here, the opening of the door, I guess I'm persuaded by the evidence that the officer here, both officers felt that there were other individuals. [T]hey heard voices and I suppose we might say that's not unusual but certainly it doesn't put the officers any further at ease to think that they heard more voices than just two voices and one of the officers even said that he thought he heard voices even after they had stopped and talked with [defendant]. It doesn't put them any more at ease to think that there could be other people in there even though we would expect to hear voices, so in terms of the officer

___

[2] Defendant's minor daughter was asleep inside the house while the events were occurring outside.

[3] The state does not argue on appeal that the entry into defendant's home was justified by the officer's belief that a crime was occurring on the premises.

safety issue here, I think there was a legitimate officer safety issue in opening the door * * *.

"* * * * *

"As to the exigent circumstances issue the Court would find that it's certainly reasonable given what happened, I think it's pretty common sense that people that are hanging marijuana in their house and see police officers out there, if they're going to be just left there, they're going to destroy the evidence and it's obvious that there was something inside that they didn't want the police officers to get in and I think it's reasonable to believe in this situation that that evidence would have been destroyed or certainly appreciably altered if the place hadn't been handled in the way it was."

Defendant was convicted after a stipulated facts trial. On appeal, she challenges the denial of her motion to suppress.

■ ■ The trial court's factual findings regarding the motion to suppress are binding if there is evidence to support them; our function is to "decide whether the trial court applied legal principles correctly to those facts." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Warrantless searches are *per se* unreasonable and items found in such a search will be suppressed, unless the search fits one of the narrowly drawn exceptions to the warrant requirement.[4] *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983).

■ The state first argues that the search fell within the officer safety exception. The Supreme Court has held that

"Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others * * *." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987).

We will not uncharitably second guess the judgment of an officer faced with a potentially life-threatening situation. Officers must be "allowed considerable latitude to take safety precautions in such situations." *Id.* Nevertheless, the officer's actions must be supported by

"a reasonable suspicion, *based upon specific and articulable*

---

[4] Even though the officers eventually obtained a warrant to search the premises, we treat the search of defendant's home as a warrantless search, because "the subsequent securing of a search warrant does not affect the validity of the original entry." *State v. Matsen/Wilson*, 287 Or 581, 588, 601 P2d 784 (1979).

*facts*, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *Id.* (emphasis supplied).

As the Supreme Court has said:

"[There are] dangers inherent in the work of police officers. The potential for violence exists in all confrontations between police and private citizens. *But a remote possibility of harm to the police officers cannot justify a warrantless entry into the private recesses of one's house. Absent articulable facts that evidence a compelling and urgent need for the entry, the Oregon Constitution demands a warrant be issued." Davis*, 295 Or at 243 (emphasis supplied).

Here, when asked what specific facts led him to believe that he was in jeopardy, Darby testified that he "heard what [he] believed to be several subjects speaking and an overwhelming odor of marijuana." A feeling of uneasiness alone does not authorize a warrantless search of someone's home. That the officers "heard voices" and "smelled marijuana," simply does not support a reasonable belief that the officers were in immediate danger of serious bodily injury. The suspects Darby encountered gave no indication that they posed a threat to his safety. This was not a case where the officers had reason to believe that defendant was presently dangerous, *Ehly*, 317 Or at 81, or that weapons were "readily available" in the house, *State v. Barnett*, 132 Or App 520, 524, 888 P2d 1064, *rev den* 321 Or 137 (1995), or where any other "specific and articulable facts" were present to indicate that the officers' lives were threatened. The warrantless search was not justified by the officer safety exception to the search warrant requirement.

■■ The state next argues that the search was justified to prevent the destruction of evidence. A warrantless search may be conducted when there is probable cause to believe that a crime has occurred and exigent circumstances, such as the threat of the destruction or loss of evidence, exist. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). The threat, however, must be "more than a generalized concern that some unknown person might interfere with the evidence." *State v. Sargent*, 123 Or App 481, 490, 860 P2d 836 (1993), *rev allowed* 319 Or 80 (1994). As we said in *State v. Nicholson*, 89 Or App 306, 312, 748 P2d 1028, *rev den* 305 Or 672 (1988),

"Oregon courts have held that the possibility that such interference would occur before a warrant could be obtained constituted exigent circumstances *only when the state has proven that identifiable persons with a motive to interfere existed.*" (Emphasis supplied.)

The Supreme Court held in *State v. Matsen/Wilson*, 287 Or 581, 587, 601 P2d 784 (1979), that "[t]he fact that drugs are usually of a destructible nature * * * does not *ipso facto* create exigent circumstances." In that case, police officers received information that substantial drug traffic was occurring at a particular house. They observed the house for a few weeks and identified the individual who they believed was the major supplier. On a particular day, they received word that a large drug load would be delivered later that day. When the supplier arrived at the house, the officers entered the house and "froze the premises" until a search warrant arrived several hours later. The trial court denied the defendants' motion to suppress and we affirmed. *State v. Matsen/Wilson*, 38 Or App 7, 588 P2d 1284 (1979). The Supreme Court reversed, saying:

"the evidence does not support the trial court's finding of exigent circumstances because the state failed to prove that destruction of contraband * * * was imminent. * * * The warrant process is more than an inconvenient formality. As stated more than thirty years ago by the Supreme Court in *Johnson v. United States*, 333 US 10, 13-14, [68 S Ct 367, 92 L Ed 436] (1948):

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'

"We cannot hold that these circumstances are exigent, because to do so would expand this exception to swallow the warrant requirement." *Matsen/Wilson*, 287 Or at 587.

The same holds true here. When asked whether there were any facts indicating that evidence was about to be destroyed, Darby replied in the negative. He later articulated a general concern that, "obviously, if I'd left at that point

[before opening the door], * * * [the marijuana] would not have been there when we returned with a search warrant." But, as Darby's earlier testimony revealed, no specific facts indicated that evidence was going to be destroyed. Thus, the only fact supporting a finding of exigent circumstances was the presence of drugs and, as the Supreme Court recognized in *Matsen/Wilson*, if the mere presence of drugs were sufficient to constitute exigent circumstances, the warrant requirement would be eviscerated. Accordingly, this warrantless search was not justified by exigent circumstances.

Reversed and remanded for a new trial.