Argued and submitted September 9, decisions of the Court of Appeals reversed; judgments of the circuit court affirmed September 26, 1996, both petitions for reconsideration denied January 14, 1997

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## KARI REIN,
*Respondent on Review.*

(CC 92-CR-0573; CA A81745; SC S42806)

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## JAMES MICHAEL JUNGWIRTH,
*Respondent on Review.*

(92-CR-0574; CA A81746; SC S42807)

(Cases Consolidated for Argument and Opinion)

923 P2d 639

Kaye E. Sunderland, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Kari Rein, respondent *pro se*, argued the cause and filed the response.

James Michael Jungwirth, respondent *pro se*, argued the cause and filed the response.

GILLETTE, J.

**GILLETTE, J.**

In these two criminal cases, consolidated for purposes of review, defendants were charged with various drug-related offenses in connection with a marijuana-growing operation that they were conducting in their home in rural Josephine County. Two police officers came to defendants' home in an attempt to serve citations to appear in court on two persons other than these defendants.[1] Upon their arrival, the officers first encountered defendant Rein and then, shortly thereafter, defendant Jungwirth, each of whom came out of a house to approach the officers. Both Rein and Jungwirth had a strong odor of marijuana about their persons. Moreover, as Jungwirth came out of the house, the officers smelled a strong odor of marijuana emanating from the residence. After the officers' requests to enter the house were rebuffed, a struggle with defendants ensued. After securing defendants, the officers opened a door and looked inside the home, where they saw evidence of a marijuana-growing operation, as well as a small child sleeping in a hammock. Thereafter, one officer actually entered the home in the company of defendant Rein in order to ensure the safety of the child.

The officers applied for a search warrant, reporting all the foregoing facts in the supporting affidavit. A search warrant issued, and officers searched defendants' home, seizing the evidence that lies at the heart of the present cases.

Defendants moved to suppress the evidence seized pursuant to the warrant, arguing that the officers' initial look inside their home was illegal and that the resulting warrant was therefore tainted. The trial court disagreed, and defendants thereafter were convicted of various charges.

On defendants' separate appeals to the Court of Appeals, that court reversed their convictions. *State v. Rein,* 136 Or App 316, 901 P2d 982 (1995); *State v. Jungwirth,* 136 Or App 546, 902 P2d 114 (1995) (per curiam, relying on *Rein*). The pivotal consideration for that court was the officers' initial, warrantless search, *viz.,* their look into defendants'

---

[1] As the cases come before us, there is no challenge either to the efficacy of the citations that the officers wished to serve or to the officers' right to come to the door of defendants' home in an attempt to serve those citations.

home. The Court of Appeals was of the view that, under its own case law and particularly under *State v. Nicholson*, 89 Or App 306, 748 P2d 1028, *rev den* 305 Or 672 (1988), the officers' initial, warrantless search was not legally justified. Because observations made during that initial entry were reported in the affidavit supporting the subsequent search warrant, the court held that defendants' motions to suppress should have been granted. *Rein*, 136 Or App at 321-22; *Jungwirth*, 136 Or App at 546. We allowed the state's petitions for review to address whether the Court of Appeals' rule expressed in *Nicholson* is a correct application of our Article I, section 9, jurisprudence.

We now conclude, however, that we need not address the *Nicholson* issue in deciding this case. When all the evidence that was derived from the officers' initial, warrantless search, as well as any observations made when entering the residence later to ensure the child's safety, is excised from the affidavit in support of the search warrant, the remaining information nonetheless supplies probable cause to justify issuance of the search warrant that was issued in this case.[2] The strong odor of marijuana emanating from the house, accompanied by the same strong odor on both defendants' persons, would lead a neutral and detached magistrate to conclude that there was likely to be found a considerable amount of marijuana inside the home.[3]

---

[2] A search pursuant to a search warrant may be proper, if the supporting affidavit contains information that was properly obtained and that amounts to probable cause, even if other information in the affidavit was not obtained properly. *See State v. Harp*, 299 Or 1, 5-9, 697 P2d 548 (1985) (illustrating process by excising from consideration inaccurate information in an affidavit supporting a search warrant); *compare State v. Keeney*, 323 Or 309, 316-21, 918 P2d 419 (1996) (when information in affidavit is to be excised as intentionally false, trial court entitled to distrust and, therefore, to disregard other information as well).

The focus of contention between the parties in this case has been over whether the circumstances that led to the officers' initial, warrantless look inside defendants' home was legally justified. Because we conclude that there was probable cause to issue a warrant based on evidence that was obtained before either the initial or the second entry, which also was made without a warrant, we express no opinion as to the legality of either warrantless entry.

[3] *See State v. Slowikowski*, 307 Or 19, 27, 761 P2d 1315 (1988) (implicitly accepting proposition that odor of marijuana emanating from closed storage area supplied probable cause to obtain search warrant for that storage area).

Defendants do not separately challenge either the wording of the search warrant or the scope of the search that was carried out pursuant to it. It follows from the foregoing that the trial court's orders denying defendants' motions to suppress were correct and that the Court of Appeals' reversals of those orders was erroneous.

The decisions of the Court of Appeals are reversed. The judgments of the circuit court are affirmed.