BALMER, J.
*54 **428 In this criminal case, defendant sought to suppress evidence discovered in a warrantless search of his car, asserting that, because he had been stopped for a traffic infraction rather than in connection with a crime, the police officer's failure to obtain a warrant was not excused by the automobile exception to the warrant requirement of Article I, section 9, of the Oregon Constitution.[1] The trial court ruled that the automobile exception applied and that no warrant was necessary. It therefore declined to suppress the evidence. The Court of Appeals affirmed. State v. Bliss , 283 Or. App. 833, 390 P.3d 1099 (2017). For the reasons set out below, we affirm the ruling of the trial court and the decision of the Court of Appeals.
We review a trial court's denial of a motion to suppress for errors of law, and we are bound by the trial court's findings of historical facts if there is evidence in the record to support them. State v. Maciel-Figueroa , 361 Or. 163, 165-66, 389 P.3d 1121 (2017).
In March 2014, a police officer stopped defendant for speeding after observing him driving 79 miles per hour in a 60-mile-per-hour zone. The officer approached the car and asked defendant for his license and registration. Defendant appeared to be very nervous and he was sweating heavily. A strong odor of marijuana emanated from the car. The officer's check of defendant's records revealed that defendant did not own the car, that the license plates on the car were registered to a different car, and that defendant was a state and federal parolee. While the officer questioned defendant, defendant repeatedly reached under the seat. Based on defendant's conduct in reaching under the seat, his nervous demeanor, the fact that he was on parole, and the odor of marijuana coming from the car, the officer became concerned that defendant was concealing a weapon **429 in the car. The officer asked defendant to step out of the car and then patted him down to check for weapons. The officer did not find any weapons on defendant's person, but he felt a small, thin pipe with a bulbous end and a two- to three-inch stem. The officer asked defendant if that object was a methamphetamine pipe, and defendant responded that it was. The officer removed the pipe from defendant's pocket and saw that it contained some burned residue in the bowl. The officer also found a small piece of wadded up plastic containing a powder residue. The officer believed that the residue in the pipe and plastic was methamphetamine. The officer arrested defendant and placed him in the patrol car.
Because, in the officer's experience, users of illegal drugs often carry weapons and drugs in their cars, the officer then searched the car for weapons and other drugs. The officer found drug paraphernalia in the car and two packaged bags of marijuana in a backpack in the trunk. Finally, the officer searched defendant's wallet and found a small paper-fold containing a white powdered substance that the officer thought was methamphetamine.
Defendant was charged with one count of delivery of marijuana, one count of possession of methamphetamine, and one count of possession of four ounces or more of marijuana. Before trial, defendant moved to suppress the evidence that was found in the search of his person and his car, as well as the statement that he made to the officer confirming the existence of the methamphetamine pipe in his pocket. Among other things, defendant asserted that the warrantless search of his car for contraband was not justified by the automobile exception to the warrant requirement. Defendant contended that the automobile exception applies only in cases in which a police officer encounters a moving vehicle in connection with the investigation of a crime. Therefore, defendant argued, because the officer had stopped defendant for a traffic infraction and only later, during the course of the stop, developed *55 probable cause to search the car for evidence of a crime, the exception did not apply and a warrant was required.
The trial court denied the motion to suppress, ruling that, because the police officer lawfully stopped the car **430 and lawfully developed probable cause to search the car for evidence of a crime, the warrantless search of the car was justified under the automobile exception to the warrant requirement. The trial court also denied defendant's motion to suppress the evidence found on his person and defendant's statement concerning the methamphetamine pipe. The prosecutor dismissed the second and third counts against defendant, and, after a stipulated facts trial, the court convicted defendant of one count of delivery of marijuana.
Defendant appealed his conviction to the Court of Appeals, repeating his argument that the automobile exception does not apply when a defendant has been stopped for a traffic infraction and not in connection with a crime. The Court of Appeals rejected that argument and affirmed defendant's conviction. Bliss, 283 Or. App. at 842, 390 P.3d 1099.
On review, defendant continues to press his argument that, under this court's case law, Article I, section 9, of the Oregon Constitution requires a police officer to obtain a warrant before searching a vehicle when the officer stops the vehicle for a traffic violation and only develops probable cause to search the vehicle for evidence of a crime during the stop. Notably, defendant does not argue that the initial traffic stop was unlawful, nor does he dispute that the officer had probable cause to conclude, at the time of the search and based on his observations and interactions with defendant, that the car contained contraband or evidence of a crime. Rather, his sole argument is that the automobile exception does not apply when the initial stop is for a traffic violation, rather than for a criminal offense. See ORS 161.515 (defining "crime" as a felony or misdemeanor). Therefore, he argues, the trial court erred in denying his motion to suppress.
Article I, section 9, of the Oregon Constitution establishes the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." That provision generally requires law enforcement officers to obtain a warrant before executing a search. As we have stated, warrantless searches are per se unreasonable unless they fall within one of the few specifically established and limited exceptions to the warrant requirement. State v. Blair , 361 Or. 527, 534, 396 P.3d 908 (2017) ;
**431 State v. Bonilla , 358 Or. 475, 480, 366 P.3d 331 (2015). One of those exceptions, known as the automobile exception, was announced over 30 years ago in State v. Brown , 301 Or. 268, 721 P.2d 1357 (1986). In that case, the court stated that the only two requirements for the automobile exception are "(1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle." Id . at 274, 721 P.2d 1357. As articulated in Brown , then, a warrantless search of a mobile vehicle is valid if the vehicle was lawfully stopped and there was probable cause for the search. The court in Brown "reasoned that the mobility of the vehicle, by itself, creates an exigency because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." State v. Meharry , 342 Or. 173, 177, 149 P.3d 1155 (2006) (quoting Brown, 301 Or. at 275, 721 P.2d 1357 ) (internal quotation marks omitted). As noted, there is no dispute in this case that defendant's vehicle was mobile at the time of the stop, that the vehicle was lawfully stopped for a traffic violation, and that the police had probable cause to search the vehicle for evidence of a crime at the time of the search.
Defendant makes a different argument. He notes that, in Brown , the police officer stopped the defendant while he was driving because the officer planned to arrest defendant on criminal charges. He argues that the automobile exception should not extend to cases beyond the factual scenario in Brown . He contends that, in every case following Brown in which this court has applied the automobile exception, the police officer had probable cause to believe that the vehicle contained evidence of criminal activity at the time that the police encountered it, and, in fact, that this court often has stated that the *56 automobile exception applies only if the vehicle was mobile when the police officer encountered it "in connection with a crime." Defendant urges us to hold that the automobile exception is a rule of per se exigency that applies only when police lawfully stop a car that they have probable cause to search for evidence of criminal activity at the time they initiate the stop. For the reasons that follow, we conclude that Brown is not as narrow as defendant suggests, and we decline to limit the scope of the automobile exception in that manner. **432 It is true that, in Brown , the police officer had probable cause to search the defendant's car at the time he stopped the defendant to arrest him for a crime. However, the court did not identify that fact as important to its decision or otherwise indicate that the rule that it announced was limited to that factual scenario. Instead, the court referred to a "lawfully stopped automobile," using plain words that apply equally whether the car was lawfully stopped for a traffic infraction or for a crime:
"[P]robable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or crime evidence justifies an immediate warrantless search of the entire automobile for the object of the search, despite the absence of any additional exigent circumstances."
301 Or. at 277, 721 P.2d 1357. Similarly, the court stated, "the key to the automobile exception is that the automobile need be mobile at the time it is lawfully stopped. No exigent circumstances other than the mobility of the stopped vehicle need be demonstrated." Id . at 276, 721 P.2d 1357. Both in its reasoning and its articulation of the rule it announced, Brown focused on the mobility of the vehicle at the time of the stop and on whether police had probable cause to search the car at the time of the search. Although Brown also requires that the car have been "lawfully" stopped, nothing in the opinion suggests that a lawful stop for a traffic violation is not sufficient.
Moreover, nothing in the court's rationale for adopting the automobile exception to the warrant requirement suggests an intention to limit the exception to cases in which the police have probable cause to search the vehicle at the time of the stop. Indeed, in focusing on the mobility of the vehicle as the exigency justifying the exception to the warrant requirement, Brown suggests the opposite. As we have already noted, the court in Brown stated that the exigency arises "because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Id . at 275, 721 P.2d 1357. Further, the court stated,
"In the case at bar, the trial judge recognized that the mobility of the vehicle alone created the exigent circumstances necessary to satisfy **433 Article I, section 9, of the Oregon Constitution, and he properly disregarded that the defendant was under arrest and in police custody and that the car was under police control when the search was conducted. As previously mentioned, under the 'automobile mobility' test it does not matter whether the passenger could have taken over the custody of the car (which he eventually did), whether the police had adequate personnel to back-up the arrest, whether a tow truck was available, whether a magistrate was available by telephone or otherwise, or whether a threatening crowd was gathered, etc. All the trial judge needed to find was what he did find: (1) the car was mobile at the time it was stopped by the police; and (2) the police had probable cause to believe that the car contained contraband or crime evidence."
Id. at 278, 721 P.2d 1357 (footnote omitted). As we have stated, whether a car is mobile when the police first encounter it is unrelated to whether the police are investigating a traffic infraction or a crime, and it is unrelated to whether the police have probable cause to search at the time of the stop or develop probable cause based on circumstances that only later become apparent. Nothing in the reasoning, text, or logic of Brown supports the rule that defendant proposes.
We also note that, in Brown , this court cited cases from other state appellate courts that it found persuasive, including cases from the Illinois and California Supreme Courts that upheld warrantless searches of automobiles *57 stopped for traffic violations. 301 Or. at 276-77 & n. 5, 721 P.2d 1357 (citing, e.g. , People v. Smith , 95 Ill.2d 412, 69 Ill.Dec. 374, 447 N.E.2d 809 (1983) and Wimberly v. Superior Court , 16 Cal. 3d 557, 128 Cal.Rptr. 641, 547 P.2d 417 (1976) ). That reliance certainly indicates that the court in Brown was not contemplating or relying on the distinction defendant seeks to draw here between a lawful stop of a vehicle based on a traffic violation and a lawful stop based on probable cause to believe that the vehicle contained contraband or evidence of a crime.
Finally, the court stated that an important purpose of adopting the automobile exception is to provide police with
"clear guidelines by which they can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops."
**434 Brown , 301 Or. at 277, 721 P.2d 1357. That is, adoption of a per se rule was necessary because "[e]xigencies should not be determined on a case-by-case basis." Id . As the Court of Appeals stated below, that emphasis on clear guidelines for police officers suggests that the court intended the automobile exception to apply to all lawful roadside stops of mobile vehicles, and not just to some of them, dependent on the state of mind of the officer at the time of the stop. Bliss , 283 Or. App. at 839, 390 P.3d 1099.
Indeed, it will sometimes be the case that police will reasonably suspect at the time of the initial stop that a driver has committed a traffic violation and that the driver has committed a crime, such as driving under the influence of intoxicants. In such a circumstance, police may stop a driver because, for example, she has failed to stay in her lane, signal when required, or stop at a stop sign-all traffic violations-and may not develop probable cause to search the vehicle to investigate the crime of driving under the influence until they have interacted with the driver. Similarly, police may stop an erratic driver based on reasonable suspicion that the driver has committed either the violation of careless driving, ORS 811.135, or the crime of reckless driving, ORS 811.140. Much of the rationale of Brown was to provide law enforcement with "simple guidelines" and a "per se " rule for all highway stops, rather than a "complex set of rules dependent on particular facts regarding the time, location and manner" of the stop. Brown , 301 Or. at 277, 721 P.2d 1357. Defendant's proposed distinction between stops based on traffic violations and stops based on criminal activity would be complex in practice and undercut the clarity Brown sought to establish.
Our cases applying Brown indicate that this court has consistently adhered to a bright line separating vehicles that are mobile from those that are parked, immobile, and unoccupied when first encountered by the police. For instance, in State v. Kock , 302 Or. 29, 725 P.2d 1285 (1986), police received a tip that the defendant was stealing from his workplace, investigated by observing his parked and unoccupied vehicle at work for several hours, including while he placed a package in the vehicle and then returned to work, and then searched the car without a warrant. This court rejected the state's reliance on the automobile exception to justify the warrantless search, finding that there was no **435 exigency, because the car was "parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime." Id. at 33, 725 P.2d 1285. We reached the same result in State v. Kurokawa-Lasciak , 351 Or. 179, 263 P.3d 336 (2011), where police stopped the defendant for questioning as he walked from a casino parking lot toward the casino. The court rejected the state's argument that, even though the car was parked, immobile, and unoccupied when police stopped the defendant 30 feet from the car, the vehicle was "mobile," because the defendant had just been driving it and because there was no showing that it was "inoperable" at that point. Id. at 193-94, 263 P.3d 336. This court found no evidence in the record that the car was mobile when police first encountered it and declined to shift the focus from "mobility" to "operability." Id. at 193, 263 P.3d 336.
However, and contrary to defendant's assertion, the court often has applied Brown beyond the specific circumstances of that *58 case. As we have stated, in Brown, the police stopped the defendant while he was driving, because they intended to arrest him on assault and theft charges. 301 Or. at 270, 721 P.2d 1357. The facts in Meharry were quite different. There, the local fire chief "saw [the] defendant driving her van erratically, failing to maintain her lane, and nearly rear-ending a car that had stopped for a pedestrian." 342 Or. at 175, 149 P.3d 1155. He followed the defendant and called the police on his cell phone. As the police officer was leaving the police parking lot, he saw the defendant drive by, followed her, and then watched as she pulled into the parking lot of a convenience store, missing the driveway and driving over the curb as she entered. The police officer then parked his car behind the defendant's van, preventing her from leaving. This court had no difficulty rejecting the defendant's argument that the van was not mobile when the police encountered it in the convenience store parking lot. The court instead held that the police had "encountered" the van when they observed it driving down the street and then into the parking lot. The van remained mobile, the court held, and the exigency continued. Id. at 179-80, 149 P.3d 1155. The court likewise disagreed with the defendant's argument that because the defendant had entered the parking lot on her own, the police had not effected a "stop," concluding that the placement of the police **436 car behind the defendant's van prevented the van from continuing on its way after the defendant had completed her errand and thus constituted a stop. Id. at 180, 149 P.3d 1155.
Similarly, in State v. Andersen , 361 Or. 187, 390 P.3d 992 (2017), defendant argued that the automobile exception did not apply because the police, who had arranged for a drug purchase through an informant and were waiting out of sight for the car that would be involved in the purchase to come into a parking lot, had not seen the car actually in motion as it entered the parking lot and stopped. This court rejected the defendant's argument that the car was not "mobile" when the police first encountered it, stating that the running communication by text messages and phone calls between the police and the informant in the car about the car's progress towards and into the parking lot met the requirement. Id. at 198, 390 P.3d 992. This court summarized its cases on the issue:
"In both Meharry and Kurokawa-Lasciak , this court adhered to the line that it drew in Brown and Kock. We do so here as well. That is, we reaffirm that the Oregon automobile exception applies if the automobile is mobile when the officers first encounter it in connection with the investigation of a crime. We also reaffirm that the exception does not apply if the car is parked, unoccupied, and immobile when officers encounter it."
Id. at 197, 390 P.3d 992. As is evident from the foregoing, the "bright line" that the court has adhered to relates to the mobility of the vehicle at the time of the stop; the court has never limited Brown to the precise circumstances presented there.
The broad, unambiguous terms in which the court in Brown repeatedly articulated the automobile exception, together with its stated rationales for the rule, support the state's contention that the court intended the rule to apply to all lawful roadside stops of mobile vehicles, regardless of whether the officer had probable cause to search the vehicle at the time of the stop or instead developed probable cause to search during the course of the stop.
Defendant nevertheless asserts that this court has articulated the automobile exception as applying only when police stop a mobile vehicle in connection with a crime. See, e.g. , Kurokawa-Lasciak , 351 Or. at 192, 263 P.3d 336 ("[T]o qualify for the **437 automobile exception, the vehicle that the police search must be mobile at the time that the police encounter it in connection with a crime."); Andersen , 361 Or. at 197, 390 P.3d 992 (same); Kock , 302 Or. at 33, 725 P.2d 1285 (considering mobility of car when "the police first encountered it in connection with the investigation of a crime"). According to defendant, the phrase "encounter [the vehicle] in connection with a crime" is a "description of the probable cause component of Brown ." That is, defendant argues that this court, in using that phrase, meant that the *59 automobile exception applies only when the police stop a vehicle "in connection with a crime," i.e. , with probable cause to search the vehicle for evidence of a crime.
However, none of those cases addressed the issue that defendant argues here, and the passages defendant quotes simply describe the facts specific to those cases. Each of those cases turned on the completely different question-one that the court expressly left open in Brown[2] and has considered several times-of when a nonmoving car is nonetheless "mobile" for purposes of the automobile exception. Those cases mention the fact that police were investigating crimes, but that was because the stops in those cases were based on criminal investigations, not on traffic violations, and the opinions reflect the context of each case. It is also possible that this court used the phrase "in connection with a crime" colloquially as referring to anything illegal, including traffic violations, rather than intending the statutory definition of a "crime" as a felony or misdemeanor. See ORS 161.515 (defining "crime"). More significantly, as discussed at length above, no decision from this court has suggested that any aspect of the automobile exception turns on that phrase, the court has not elaborated on its use of the phrase, the court has used the phrase interchangeably with the term "lawfully stopped" (which clearly covers traffic stops), and defendant's interpretation is inconsistent with the stated rationale for the automobile exception.
**438 As this court stated in Kock , the "bright line" that Brown established was simply that "automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence." 302 Or. at 33, 725 P.2d 1285 (emphasis added). In contrast, vehicles that are "parked, immobile and unoccupied at the time the police first encountered" them may not be searched without a warrant or some other exception to the warrant requirement. Id. Nothing in Kock suggests that the court intended to permit the automobile exception to apply when the police are investigating a crime at the time of the stop, but not when the police lawfully stop a vehicle for a traffic violation. Nor does Kock - or any subsequent case-indicate that the automobile exception applies only when police have probable cause to search the car at the time of the initial stop or encounter, and not when they develop probable cause in the course of an otherwise lawful stop.[3]
In Brown , this court held that there are two requirements for the automobile exception: (1) the car must have been mobile at the time it was lawfully stopped by the police; and (2) the police had probable cause to believe that the car contained contraband or crime evidence at the time of the search. Brown , 301 Or. at 278, 721 P.2d 1357. We adhere to that formulation of the rule here. In this case, defendant's vehicle was mobile when the police officer lawfully stopped it for a traffic infraction, and the officer had probable cause to believe the car contained evidence of a crime at the time of the warrantless search. The automobile exception applies.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.
Walters, C.J., dissented and filed an opinion, in which Nakamoto, J., joined.

Article I, section 9, of the Oregon Constitution provides:
"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The court in Brown stated:
"We are not confronted in this case with the search of a vehicle that is not mobile and has not just been lawfully stopped by a police officer. We, therefore, do not address in this opinion whether a warrant for the search and seizure of a parked or impounded automobile is required."
301 Or. at 277, 721 P.2d 1357.

That view is consistent with this court's recent description of the "automobile exception" as providing that "an officer who has stopped a mobile vehicle may conduct a search without a warrant if the officer has probable cause to believe that the vehicle contains evidence of a crime." State v. Watson , 353 Or. 768, 785 n. 19, 305 P.3d 94 (2013). That description, of course, makes no mention of the "encountered in connection with a crime" requirement that defendant urges, and the facts in Watson were similar to those here: police had made a lawful traffic stop and, during the course of the stop, developed probable cause to believe that defendant was engaged in criminal activity.