Argued and submitted September 17, 2018, reversed and remanded
January 29, petition for review allowed July 2, 2020 (366 Or 691)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

CHARLES STEVEN McCARTHY,
*Defendant-Respondent.*

Marion County Circuit Court
16CR75546; A165026

459 P3d 890

The state appeals from a pretrial order granting, in part, defendant's motion to suppress evidence that was seized pursuant to a warrantless search of defendant's automobile. The state assigns error to that order, arguing that the search was lawful under the automobile exception to the warrant requirement. In response, defendant contends that the trial court properly granted his motion to suppress because the state failed to demonstrate an actual exigency in this specific case according to the standards articulated in *State v. Andersen*, 361 Or 187, 390 P3d 992 (2017). Specifically, the parties disagree over the significance of the Oregon Supreme Court's statement, "Nor do we foreclose a showing in an individual case that a warrant could have been drafted and obtained with sufficient speed to obviate the exigency that underlies the automobile exception." *Andersen*, 361 Or at 201. *Held*: Although *Andersen* contemplated the effects of technology on the assumptions underlying the automobile exception, Oregon's automobile exception does not require the state to show any particular exigency under the facts of the encounter, nor does it require the state to establish that a telephonic warrant was unavailable.

Reversed and remanded.

Lindsay R. Partridge, Judge.

Christopher A. Perdue, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Zachary J. Stern argued the cause for respondent. Also on the brief was Ferder Casebeer French & Thompson, LLP.

Before Lagesen, Presiding Judge, and James, Judge, and Sercombe, Senior Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

The state appeals from a pretrial order granting, in part, defendant's motion to suppress evidence that was seized pursuant to a warrantless search of defendant's automobile. The state assigns error to that order, arguing that the search was lawful under the automobile exception to the warrant requirement. In response, defendant contends that the trial court properly granted his motion to suppress because it correctly held that the automobile exception is not a *per se* exception, and here, the state failed to demonstrate an actual exigency in his specific case according to the standards articulated in *State v. Andersen*, 361 Or 187, 390 P3d 992 (2017). Specifically, the parties disagree over the significance of the Oregon Supreme Court's statement, "Nor do we foreclose a showing in an individual case that a warrant could have been drafted and obtained with sufficient speed to obviate the exigency that underlies the automobile exception." *Id*. at 201 (internal citations omitted). Although we agree with defendant that, in making that statement the court in *Andersen*, echoing *State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986), was contemplating the effects of technology on the assumptions underlying the automobile exception, we conclude that Oregon's automobile exception, as articulated by the collective weight of Oregon Supreme Court precedent, does not require the state to show any particular exigency under the facts of the encounter, nor does it require the state to establish that a telephonic warrant was unavailable. Accordingly, we reverse and remand.

"We review the trial court's ruling on a motion to suppress for errors of law, and are bound by the trial court's express and implicit findings of fact if there is constitutionally sufficient evidence in the record to support them." *State v. Perrott*, 288 Or App 837, 838, 407 P3d 892 (2017) (relying on *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)).

Two detectives, Garland and Bidiman, were surveilling a suspected drug house when they saw defendant and two other men in a truck outside. The detectives followed the truck because they recognized defendant as a person of interest based on previous investigations. While following defendant, the detectives saw the truck drift into the

bike lane and pulled it over. Defendant drove the truck into a tavern parking lot and legally parked the vehicle. Garland blocked the truck from leaving by parking his unmarked police car behind the truck in the parking lot. Another detective, Smith, shortly arrived on the scene as backup.

Garland asked defendant for his driver's license, registration, and proof of insurance. Defendant immediately told the detective that his license was suspended, that he did not own the truck he was driving, and that he did not know which insurance company insured the truck. While interacting with defendant, the detectives noticed that defendant and his two passengers appeared nervous and that they had black tar stains on their hands that the detectives considered consistent with handling heroin. Smith asked defendant about the black tar stains on his hands and defendant claimed the stains were from food and working on engines.

Smith told Garland and Bidiman that Street Crimes Unit Detective Carney still had probable cause to arrest defendant for conspiracy to deliver heroin stemming from an investigation five months earlier.[1] From the tavern parking lot, Smith called Carney and explained that the detectives had pulled over defendant. Carney requested that they arrest defendant.

However, the detectives did not immediately arrest defendant; instead, the detectives decided to call Trooper Freitag, a drug enforcement K9 officer. When Freitag arrived, the detectives removed defendant and his passengers from the truck and arrested defendant for conspiracy to deliver heroin. The drug dog alerted to the interior passenger door, and Freitag concluded that it was more likely than not that the truck contained drugs. The detectives had also called the registered owner of the truck but had to detain him on an outstanding warrant when he arrived. The detectives could not tow the truck because the tow policy at the Salem Police Department did not authorize the detectives to impound a legally parked truck in a public parking lot. Moreover, the detectives believed that applying for a warrant would have taken at least four or five hours. So, the

---

[1] In June 2016, defendant had allegedly agreed to sell heroin to an undercover police detective, Carney, but the deal fell through.

detectives searched the truck relying on the automobile exception to the warrant requirement and discovered drug paraphernalia with heroin and methamphetamine residue. The state charged defendant with possession of heroin and delivery of heroin.

Before trial, defendant moved to suppress various items seized after his arrest, including the items discovered during the search of the truck. The trial court ruled on the motion in two separate letter opinions, concluding that the automobile exception did not apply for two reasons: (1) the detectives did not demonstrate an actual exigency given the possibility of a telephonic warrant and (2) the otherwise legally parked truck was immobile.

In the first letter opinion issued by the trial court on April 11, 2017, the court made the following findings:

"3.   During the 'lull' Officer Garland had contact with Agent Carney and Agent Carney requested that Officer Garland arrest defendant for an alleged drug offense on May 16, 2016.

"* * * * *

"5.   Immediately prior to the traffic stop the vehicle was mobile. During the traffic stop the vehicle was lawfully parked in a parking lot accessible to the public.

"6.   Once defendant was in custody[,] the vehicle was at least temporarily immobile. * * *

"7.   Probable cause existed to believe the vehicle would contain contraband due to the following:

"a.   Officer Garland observed defendant leaving from a residence that he knew to be a known drug house[;]

"b.   Police officers knew there was probable cause to arrest defendant for a drug offense from May 16, 2016;

"c.   During the traffic stop officers observed stains on defendant's shirt and fingers consistent with tar heroin;

"d.   Defendant appeared nervous and shaky during his contact with police;

"e.   A drug detection dog alerted to the presence of controlled substances during the traffic stop."

The trial court explained that "Oregon appellate courts have clarified that the mobility of the vehicle and the existence of probable cause to believe defendant has committed a crime must exist at the same time for the exception to apply." Given the trial court's understanding of the exception, it held that "the police did not develop probable cause that defendant committed a crime until after the vehicle was stopped. Additionally, during the investigation of the traffic stop, the police determined that neither defendant nor the registered owner could move the vehicle. *** The police developed probable cause to search the vehicle after that point [and] the vehicle was unoccupied at *** the point probable cause was developed." Thus, the trial court ruled:

> "The legal basis for applying the automobile exception is based upon the concern that a vehicle containing evidence of a crime will be moved and the state will lose the ability to seize such evidence. However, the exception requires that the state demonstrate at least a realistic likelihood that someone will move the vehicle prior to the police obtaining judicial authorization to search the automobile. In this case, the state only presented a general theory that the vehicle was operable. However, neither the registered owner nor defendant could move the vehicle as both were in custody. The vehicle was unoccupied and otherwise was parked in a manner that did not create a safety hazard. The state presented no other evidence that the vehicle could be moved. Accordingly, the warrantless search of the vehicle [was] not justified through the automobile exception."

The state filed a motion for reconsideration, requesting a second evidentiary hearing with further argument. The trial court granted the request. On May 3, 2017, in its second letter opinion on defendant's motion to suppress, the trial court addressed some arguments raised by the state at the second hearing regarding the automobile exception. The trial court explained:

> "The court must give more than lip service to the axiom that warrantless searches are *per se* unreasonable under Art. I, Section 9 and the Fourth Amendment. The rationale for the automobile exception is that evidence of crime may be lost as the automobile drives away from the traffic stop. It takes into account the reality that the evidence is mobile.

However, that rationale does not exist under the facts of this case.

"The state presented no evidence that anyone would move the automobile from the scene while the police sought judicial authorization for the search. At the supplemental hearing, the state went to great lengths to discuss the time consuming process to obtain a written search warrant. One rationale proposed by the state for not seeking a search warrant is the need for accuracy when presenting the warrant to a judge. * * *

"However, the state fails to prove how inconvenient it would have been to obtain judicial authorization in this case. The arrest occurred on a regular working day in the early afternoon. The state fails to address why one of the officers could not avail themselves of an existing process under Oregon law, make a call on a cell phone to the courthouse, lay out the facts under oath to a judicial officer and have the judicial officer determine if probable cause existed. The answer seems to be that 'we just don't do it that way.'

"Additionally, the state seemed to argue that there is a 'policy' from the Marion County Circuit Court bench that judges will not accept telephonic warrant requests. The court rejects that such a policy exists although acknowledges the bench has had discussions about some of the practical problems associated with telephonic warrants.

"In the final analysis the state must show that conducting a warrantless search is reasonable. Under the facts in this case no showing has been made. The holding in *Brown*[, 301 Or 268,] has never been universally accepted by all judges. At the time of the *Brown* decision, Justice Linde pointed out how the statute and technology back in 1986 called into question the bright line test in *Brown*. No one would dispute that the technology today is even much more advanced 30 years later.

"Today, everyone has a cellphone. * * * It is unreasonable under the circumstances in this case that no one even considered the idea of calling a judge from the site of the traffic stop to seek judicial authorization. Accordingly, this court cannot find that the state has proven that the warrantless search of the automobile was reasonable."

Ultimately, the trial court granted, in part, defendant's motion to suppress evidence discovered as a result of the warrantless search of the truck, and this appeal followed.

Article I, section 9, of the Oregon Constitution states, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause[.]" As such, "[t]hat provision generally requires law enforcement officers to obtain a warrant before executing a search. As [the Oregon Supreme Court has] stated, warrantless searches are *per se* unreasonable unless they fall within one of the few specifically established and limited exceptions to the warrant requirement." *State v. Bliss*, 363 Or 426, 430, 423 P3d 53 (2018) (citing *State v. Blair*, 361 Or 527, 534, 396 P3d 908 (2017) (internal citations omitted)).

Under the automobile exception to Article I, section 9, officers may search a car if they have "probable cause to believe that the car contains evidence of a crime and the car is mobile at the time they stop it." *Andersen*, 361 Or at 189 (internal citation omitted). The automobile exception only applies if the car is not "parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime." *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986). Therefore, the automobile exception to the warrant requirement of Article I, section 9, requires "(1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle." *Brown*, 301 Or at 274.

As originally adopted, the automobile exception to the Oregon Constitution was clearly a *per se* exception to the warrant requirement. As *Brown* noted:

> "We are convinced that adoption of a '*per se* exigency rule' is a sound approach which provides the clearest guidelines for police in conducting automobile searches. Exigencies should not be determined on a case-by-case basis."

301 Or at 277.

However, the Oregon Supreme Court cast some doubt on that *per se* nature in *Andersen* when it stated:

"We do not foreclose the possibility that *Brown* held out—that changes in technology and communication could result in warrants being drafted, submitted to a magistrate, and reviewed with sufficient speed that the automobile exception may no longer be justified in all cases. Nor do we foreclose a showing in an individual case that a warrant could have been drafted and obtained with sufficient speed to obviate the exigency that underlies the automobile exception."

361 Or at 200-01 (internal citations omitted).

*Andersen* did not elaborate, however, on how such a showing would be made, nor upon whom the burden of production and persuasion falls. As a warrantless search, normally it is the state's burden to establish an exception to the warrant requirement. *State v. Ritz*, 361 Or 781, 790, 399 P3d 421 (2017) ("The state has the burden of proving that the circumstances at the time of the warrantless search fall within the exigent circumstances exception." (Internal citation omitted.)). However, requiring the state to show the unavailability of a telephonic warrant contravenes *Brown*, which stated that "we emphasize that the key to the automobile exception is that the automobile need be mobile at the time it is lawfully stopped. No exigent circumstances other than the mobility of the stopped vehicle need be demonstrated." 301 Or at 276. Nothing in *Andersen* indicates that the court sought to overrule this aspect of *Brown*.

*Andersen* seems to imply by its wording that it is not the state's burden to show unavailability of a telephonic warrant. Rather, *Andersen* appears to envision "a showing in an individual case that a warrant *could have been drafted* and obtained with sufficient speed to obviate the exigency. 361 Or at 201 (emphasis added). Defendant, not the state, would be the party with motivation to attempt such a showing. In that respect, *Andersen* appears to cast the theoretical exigency that underlies the automobile exception as a rebuttable presumption.[2]

---

[2] In so doing, *Andersen* appears to make the automobile exception something of a unicorn, being the only warrant exception in Oregon containing a component for which it is a defendant's burden to prove the exception *does not* apply.

After *Andersen*—and after the trial court ruled in this case—the Oregon Supreme Court revisited the automobile exception in *Bliss*, clarifying that "the court intended the automobile exception to apply to all lawful roadside stops of mobile vehicles," meaning that "it will sometimes be the case that police will reasonably suspect at the time of the initial stop that a driver has committed a traffic violation *and* that the driver has committed a crime." 363 Or at 434 (emphasis in original). In that situation, the "police may stop a driver because, for example, she has failed to stay in her lane, signal when required, or stop at a stop sign—all traffic violations—and may not develop probable cause to search the vehicle to investigate the crime of driving under the influence until they have interacted with the driver." *Id.*

If *Andersen* created some uncertainty about the *per se* nature of the Oregon automobile exception, *Bliss* appears to have retreated from that view, instead reiterating that the automobile exception exists to "provide law enforcement with 'simple guidelines' and a '*per se*' rule for all highway stops, rather than a 'complex set of rules dependent on particular facts regarding the time, location and manner' of the stop." *Id.* (quoting *Brown*, 301 Or at 277). In light of *Bliss*, whatever *Andersen* contemplated by a "showing in an individual case that a warrant could have been drafted," the possibility of such a showing does not undermine the presumptively *per se* nature of the automobile exception. And, in turn, such a possibility does not create any extra burden upon the state to avail itself of the exception.

In this case, detectives testified at the evidentiary hearing that defendant was initially pulled over for a traffic violation when detectives saw the truck defendant was driving drift into the bike lane. Moreover, detectives were familiar with defendant's association with known drug activity, and, upon interacting with defendant, detectives believed that they had developed probable cause of heroin use, possession, and delivery. Eventually, detectives initiated an arrest and search of defendant and the truck he was driving when he was initially pulled over. The trial court made findings of fact to similar effect in its letter opinions and those findings are supported by evidence in this record.

Applying *Brown* to this case, detectives were permitted to execute a warrantless search of defendant's truck under the automobile exception "(1) [if] the automobile [was] mobile at the time it [was] stopped by police * * * and (2) [if] probable cause exist[ed] for the search of the vehicle." 301 Or at 274. As to the first prong—mobility—*Bliss* made clear that detectives are permitted to pull a defendant over for a traffic violation. If detectives later develop probable cause of a more serious crime requiring a search of the vehicle, as long as the vehicle was mobile at the time of the initial lawful encounter, the probable cause that follows is permissible under the second prong. Accordingly, any resulting warrantless search is permitted under the automobile exception. Here, the record shows that the vehicle was mobile at the time of the initial traffic encounter. Further, no party is contesting that, upon interacting with defendant, detectives developed probable cause of his use, possession, and delivery of heroin. Both prongs of *Brown* are therefore met.

Quite correctly, the trial court noted that it "must give more than lip service to the axiom that warrantless search are *per se* unreasonable under Art. I, Section 9 and the Fourth Amendment." *Brown* held out the promise of "a time in the near future when the warrant requirement of the state and federal constitutions can be fulfilled virtually without exception." 301 Or at 278 n 6. In many respects, the trial court's reasoning in this case echoes the concerns later expressed by the dissent in *Bliss*. There, Chief Justice Walters indicated that she "would hold that the officers were not permitted to conduct a warrantless search of [the] defendant's vehicle based on an assumed exigency. Rather, a warrant, a showing of actual exigent circumstances, or the establishment of another exception to the warrant requirement was necessary." 363 Or at 439. The *Bliss* dissent explained:

> "In *Brown*, this court assumed the existence of an exigency with the understanding that that assumed exigency would be short-lived—that, due to anticipated technological advances, there would be 'a time in the near future when the warrant requirement of the state and federal constitutions can be fulfilled virtually without exception.' That was over 30 years ago, and technological advances

have occurred. Officers should now be able to obtain war-
rants without significant delay. But, be that as it may, it is
one thing to routinely permit a warrantless search when
officers stop vehicles with probable cause to believe that
a crime has been committed. It is another thing to do so
when officers pull drivers over for traffic infractions. When
such routine stops are extended, constitutional concerns
abound."

*Bliss*, 363 Or at 439-40 (Walters, C. J., dissenting) (internal
citation omitted).

Nevertheless, as the automobile exception currently
is crafted in Oregon pursuant to *Brown*, *Andersen*, and
*Bliss*, the state is only required to show "(1) that the auto-
mobile [was] mobile at the time it [was] stopped by police or
other governmental authority, and (2) that probable cause
exist[ed] for the search of the vehicle." The state in this case
was not required to demonstrate, in addition to the above
test, that someone was likely to move this specific vehicle—
that is, that the movement exigency underlying the automo-
bile exception actually exists rather than existed in theory.
Similarly, as currently constructed, Oregon's automobile
exception does not require the state to establish the unavail-
ability of a telephonic warrant. *See Brown*, 301 Or at 274.
The trial court erred when it granted, in part, defendant's
motion to suppress evidence collected incident to a warrant-
less search of a truck in accordance with the automobile
exception.

Reversed and remanded.