Argued and submitted August 30, 2017, affirmed February 26, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS COLMAN-PINNING,
*Defendant-Appellant.*

Lincoln County Circuit Court
141564; A159431

461 P3d 994

Defendant appeals a judgment of conviction for multiple drug offenses, assigning error to the trial court's denial of his motion to suppress evidence obtained in a warrantless search of his vehicle after he was stopped on his way to a police-arranged drug buy. Defendant argues that, because law enforcement officers could have obtained a warrant to search his person, residence, or vehicle hours before the warrantless search, and because they arranged for the time and place of the stop, they created their own exigent circumstances and, therefore, the automobile exception was inapplicable to the search of his vehicle. *Held*: Because the automobile exception is a *per se* rule and its requirements were met, law enforcement officers were not required to obtain a warrant to search defendant's vehicle.

Affirmed.

Sheryl Bachart, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Affirmed.

**AMSTRONG, P. J.**

Defendant appeals a judgment of conviction after a conditional guilty plea for multiple drug offenses that the trial court entered. He assigns error on appeal to the trial court's denial of his motion to suppress evidence obtained in a warrantless search of his vehicle after he was stopped on his way to a police-arranged drug buy. We conclude that the warrantless search was valid under the automobile exception to the warrant requirement, *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986), and that the trial court did not err in denying defendant's suppression motion. We therefore affirm.

## BACKGROUND

The relevant facts are undisputed. Two or three days before defendant's arrest, police in Lincoln County stopped a person who was in possession of heroin. The person reported that, for the past six months, he had been purchasing significant amounts of heroin (15 grams for $1,600 per buy) from defendant every two to four days. Police viewed the person and his information as reliable and told him that, if he would help law enforcement locate drug dealers in the county, they would explain to the district attorney that he had been cooperative and helpful to their efforts. He agreed that he would be a "confidential person" (CP) for an investigation of defendant.

Detectives and officers in the Lincoln Interagency Narcotics Team (LINT) met with the CP at about 8:30 a.m. on the day of defendant's arrest and developed a plan that would lead defendant to believe that the CP would buy the usual amount of drugs from defendant at a certain location. The CP confirmed defendant's home address and described defendant's vehicle, a dark green Toyota pickup truck. Police then obtained defendant's license plate number from the Department of Motor Vehicles. Based on the CP's past purchases, the CP believed that defendant would take a particular route, *viz.*, he would head north on Highway 101 from his residence to the CP's workplace in Newport, the planned drug-buy location. With that in mind, LINT planned to rely on the automobile exception announced in *Brown* to stop defendant and conduct a warrantless search of defendant's

pickup while he was on his way to the arranged drug buy. *See Brown*, 301 Or at 274 (announcing a *per se* exception to the warrant requirement "provided (1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle"). LINT had regularly used such a plan in the past, where the police "create [their] probable cause prior to the person coming to a particular location."

At LINT's direction, the CP exchanged text messages with defendant and arranged for a drug buy at the CP's workplace, to occur before the CP started his shift. Detective Dorsey positioned himself about 10 minutes from defendant's home near Ona Beach, and other LINT officers waited further north along Highway 101. At approximately 11:25 a.m., Dorsey saw defendant traveling in his pickup; 10 or 15 minutes earlier, defendant had texted the CP to say that he was on his way to the buy location. At 11:35 a.m., other officers spotted defendant's pickup and pulled him over. A detective explained to defendant that he had been stopped because officers had probable cause to believe that defendant had controlled substances in the vehicle. Defendant got out of his pickup, and a detective patted defendant down and felt a round, cylindrical shape. After patting defendant down, a detective handcuffed defendant and explained that he was not under arrest but that he was being detained.

Detective Meister arrived and spoke with defendant, and defendant admitted that he possessed marijuana. Meister said that police were looking for other controlled substances, and defendant said that police did not have consent to search his pickup. Defendant asked Meister if he had a search warrant, and Meister replied that a warrant to search the pickup was not required because the stop was a *"Brown* stop." Police placed defendant in a patrol car, a police dog and officers searched the pickup, and the officers found heroin and other controlled substances. Defendant was arrested and charged with multiple counts of possession and delivery of controlled substances.

Defendant filed a motion to suppress evidence derived from the warrantless search of his pickup, and a hearing was held on the motion. Meister testified, and when

asked why LINT did not use a controlled buy and a wire to apprehend defendant with heroin, he answered that using a wire was unnecessary, because LINT could build probable cause by the exchange of texts between the CP and defendant. Moreover, Meister explained that an automobile stop is generally a safer approach. As for why LINT did not get a warrant for the search, Meister said:

> "The nature of this investigation did not preclude [*sic*] the need to get a warrant. This is a very common way of completing an investigation that there could be all sorts of little things that are involved that are going to cause concern whether a confidential person is going to be around after that day, whether he's going to [be] willing to continue to cooperate, sometimes you need to just go with what you have, and complete the investigation."

When Meister was asked if he could have obtained a warrant by 11:00 a.m. or 12:00 p.m, he replied, "Possibly," and, if he could have obtained a telephonic warrant, he replied, "Yes."

After the hearing testimony, defendant pointed out that officers had information about defendant days before the arrest, and referred to Meister's testimony that a telephonic warrant could have been obtained by "11:30 [a.m.] at a minimum." Defendant also argued that the automobile exception "generally would not apply in a situation where the plan was at all times to remove the defendant from the vehicle, rendering the vehicle immobile because the plan was to search the vehicle." For its part, the state argued that the search was permissible under the automobile exception because the vehicle was mobile when it was stopped and there was probable cause to believe it would contain controlled substances. As to when probable cause arose, the state asserted that it had "repeatedly been denied warrants" when a belief could not be articulated whether the drugs would be located either on the person or in their residence, and that sometimes drug dealers would need to go to their supplier before they could complete a drug transaction. According to the state, the police did not have probable cause until the last text message from the CP when they had reason to believe that defendant was on his way to the arranged drug buy with the heroin.

The trial court denied defendant's suppression motion, concluding that the search was valid under the automobile exception, because the officers had lawfully stopped defendant in connection with a crime—*viz.*, the delivery and possession of heroin—while his vehicle was mobile, and, when the officers stopped defendant's vehicle, the officers had probable cause to believe controlled substances were in the pickup. Ultimately, the court relied on the "bright-line" nature of the automobile exception to the warrant requirement to deny defendant's motion. Moreover, the court said, the fact "[t]hat police had available to them other investigatory tools, *i.e.*, a controlled buy or applying for a search warrant of defendant's vehicle and/or residence, does not invalidate the applicability of the automobile exception so long as the requirements of [the automobile exception] are met." Defendant entered a conditional guilty plea, reserving the right to challenge on appeal the denial of his suppression motion.

## ANALYSIS

Article I, section 9, of the Oregon Constitution prohibits unreasonable searches and seizures. A warrantless search is *per se* unreasonable unless it falls within one of the limited exceptions to the warrant requirement. *State v. Bliss*, 363 Or 426, 430, 423 P3d 53 (2018). The automobile exception is one of those exceptions and allows police to search a vehicle without a warrant if (1) the vehicle is mobile when the officers first encounter it in connection with a crime and (2) the officers have probable cause to believe that the vehicle contains contraband or evidence of a crime. *Brown*, 301 Or at 276; *State v. Andersen*, 361 Or 187, 200-01, 390 P3d 992 (2017). As explained in *Brown*, the automobile exception is a subcategory of the warrant exception for exigent circumstances, necessitated by the fact that a vehicle that is mobile can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. *Brown*, 301 Or at 275. The mobility of the vehicle creates a *per se* exigency, meaning that there is no need to establish other exigencies or that a warrant could not have been quickly obtained. *Id.* at 276.

In *Andersen*, the Supreme Court revisited the automobile exception announced in *Brown*—casting "some doubt

on the *per se* nature" of the exception, *State v. McCarthy*, 302 Or App 82, 88, 459 P3d 890 (2020)—when it explained:

> "We do not foreclose the possibility that *Brown* held out— that changes in technology and communication could result in warrants being drafted, submitted to a magistrate, and reviewed with sufficient speed that the automobile exception may no longer be justified in all cases. Nor do we foreclose a showing in an individual case that a warrant could have been drafted and obtained with sufficient speed to obviate the exigency that underlies the automobile exception."

361 Or at 200-01 (internal citations omitted).

The court did not elaborate in *Andersen* "on how such a showing would be made, nor upon whom the burden of production and persuasion falls." *McCarthy*, 302 Or App at 89. More recently, in *Bliss*, 363 Or at 434, the court again revisited the automobile exception and "appears to have retreated from" the uncertainty about the *per se* nature of the exception indicated in *Andersen*, "instead reiterating that the automobile exception exists to 'provide law enforcement with "simple guidelines" and a "*per se*" rule for all highway stops, rather than a "complex set of rules dependent on particular facts regarding the time, location and manner" of the stop.'" *McCarthy*, 302 Or App at 90 (quoting *Bliss*, 363 Or at 434 (quoting *Brown*, 301 Or at 277)). Accordingly, "whatever *Andersen* contemplated by a 'showing in an individual case that a warrant could have been drafted,' the possibility of such a showing does not undermine the presumptively *per se* nature of the automobile exception. And, in turn, such a possibility does not create any extra burden upon the state to avail itself of the exception." *Id.*

On appeal, defendant raises four arguments as to why the automobile exception does not apply to the warrantless search of his pickup, two of which we address here.[1] First, defendant argues that the automobile exception does not apply when officers "create their own exigency" by choosing the time when it decides to stop a suspect in the act of delivery. That is, in defendant's view, officers had probable

---

[1] We reject without discussion defendant's contention that this court should abandon the automobile exception or that the warrantless search of defendant's pickup truck violated the Fourth Amendment to the United States Constitution.

cause to obtain a warrant to search defendant's person, vehicle, or residence at the 8:30 a.m. meeting with the CP on the day of defendant's arrest, and therefore executing a warrantless search under the guise of the automobile exception was unjustified because the officers could have obtained a warrant much earlier than the time of the search. *Cf. State v. Matsen/Wilson*, 287 Or 581, 587, 601 P2d 784 (1979) ("The police cannot weave together a web of information, then claim exigent circumstances when the suspect arrives and can conveniently be snared."). Second, defendant argues that LINT caused defendant to enter his automobile at a specific time and to travel over a specific route with the heroin that they sought to seize as evidence, thereby manufacturing the situation to allow them to take advantage of the automobile exception. That, defendant contends, is not allowed by the automobile exception to the warrant requirement.

The state answers that, to begin with, the Supreme Court has steadfastly adhered to the "bright-line" *per se* exigency that a vehicle's mobility permits the justification to search a vehicle under the exception announced in *Brown*. Thus, the automobile exception's *per se* exigency continues to apply in *all* cases in which the requirements of the exception are met and, in this case, defendant's vehicle was mobile and police had probable cause to believe that a search of defendant's pickup would result in evidence of a crime. Even so, assuming that the *per se* nature of the exigency does not apply in the circumstances of defendant's case, the state further argues, contrary to defendant's assertion that LINT had probable cause to search defendant's person, house, or vehicle at 8:30 a.m., probable cause to believe that defendant was in possession of a significant amount of heroin did not "crystallize until defendant texted the informant that he was en route" to the CP's workplace with the drugs. Accordingly, police did not create the exigency by unreasonably delaying the search. As to defendant's argument that police caused defendant to transport controlled substances at a particular time and place and therefore manufactured the exigency, the state responds that defendant's choice to drive with the heroin to the agreed-upon meeting site was entirely defendant's own: the fact that defendant's actions conformed to LINT's expectations does not mean

that they were constitutionally compelled to obtain a search warrant.

Reviewing the trial court's denial of defendant's suppression motion for legal error, *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993), we conclude that the automobile exception provided a valid basis for the police to conduct a warrantless search of defendant's pickup and therefore affirm.

Before we address defendant's two specific arguments, we first note that both arguments presume that the automobile exception is inapplicable if police "created" the exigency. That is, defendant takes aim at the "bright-line" *per se* exception, positing that, in some cases, like this one, the *per se* nature of the rule does not apply. In *McCarthy*, the defendant raised a different challenge to the exception, arguing that the state failed to demonstrate an actual exigency given the possibility of a telephonic warrant and the immobility of the defendant's otherwise legally parked truck. 302 Or App at 85. The trial court in that case agreed with the defendant, but we reversed, explaining that, under *Brown*, *Andersen*, and *Bliss*, the state is required to show only (1) that the vehicle was mobile at the time that it was stopped by police and (2) that probable cause existed for the search of the vehicle. *Id.* at 92. Further, the state was

"not required to demonstrate, in addition to the above test, that someone was likely to try and move this specific vehicle— that is, that the movement exigency underlying the automobile exception actually exists rather than existed in theory. Similarly, as currently constructed, Oregon's automobile exception does not require the state to establish the unavailability of a telephonic warrant."

*Id.*

Likewise, here, we see nothing in the Supreme Court's automobile exception cases that would lead to us conclude—as a general proposition—that the circumstance of *who* "created" the exigency undercuts the bright-line character of the exception. It is the "mobility of the vehicle, *by itself*, [that] creates an exigency because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *State v. Meharry*, 342 Or 173,

177, 149 P3d 1155 (2006) (internal quotation marks omitted; emphasis added). That is, under the *Brown* court's reasoning, if a vehicle that police officers have probable cause to believe contains evidence of a crime that could be moved outside the legal reach of police, the vehicle's mobility puts at risk an officer's ability to obtain that evidence. How the suspect and the police arrived at such a circumstance is, under *Brown*, beside the point. Further, the *Brown* court provided a bright-line rule for police officers when conducting automobile searches so that they need not try "to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops." *Brown*, 301 Or at 277. To accept defendant's argument would necessarily add complexity to that bright-line rule, something that the *Bliss* court declined to do. With that said, even assuming that the categorical nature of the automobile exception is up for debate, we reject defendant's arguments on appeal that contend otherwise.

We first consider defendant's argument that posits that law enforcement had probable cause to conduct a search about three hours before the vehicle stop of defendant, thereby creating the exigency. For that argument, defendant relies on two cases, *Matsen/Wilson*, 287 Or at 587, and *State v. Fondren*, 285 Or 361, 591 P2d 1374, *cert den*, 444 US 834 (1979). As we explain, both cases are legally inapposite: Neither case, both decided before *Brown*, concerned the *per se* automobile exception.

In *Matsen/Wilson*, the police gathered information regarding a drug house for two weeks but, wanting to catch the defendant in the act of delivery, did not seek a warrant and instead made a warrantless entry shortly after the defendant arrived. 287 Or at 587. The Supreme Court held that the state could not claim exigent circumstances, because the "police cannot weave together a web of information, then claim exigent circumstances, when the suspect arrives and can conveniently be snared. The warrant process is more than an inconvenient formality." *Id*. In *Fondren*, the court held that there were no exigent circumstances when the police officer had the necessary information to obtain a warrant four hours before the defendant was due to finish his work shift and go to his car, but the officer

waited two hours before attempting to obtain a warrant and then decided that there was insufficient time to obtain one. 285 Or at 366-67. The court explained that the "officer cannot create exigent circumstances by his own inaction." *Id*. at 367. *Matsen/Wilson*, a search of premises, and *Fondren*, a search of a vehicle before the automobile exception was announced (and even so, the car was not mobile when the officer encountered it), both concerned the ordinary analysis for determining exigent circumstances, *viz.*, "a situation that requires police to act *swiftly* to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Stevens*, 311 Or 119, 120, 800 P2d 92 (1991) (emphasis added). That is not the case here, because the *per se* nature of the automobile exception does not require an analysis of whether an exigency exists, so long as the two requirements of the exception are met.

Further, those cases are factually inapposite. That is, we reject defendant's argument that police had probable cause to search defendant's house, person, or car at the time of their meeting with the CP and that police therefore could have obtained a warrant at that time. To begin with, defendant asserts that probable cause existed to search defendant's person, vehicle, or residence at 8:30 a.m. the day of defendant's arrest. At that meeting, the information that LINT had was that defendant regularly delivered heroin to the CP in defendant's pickup and that that information was reliable. There is nothing in the record to suggest that there was probable cause to believe that there would be heroin or other controlled substances on defendant's person or in his home. *See State v. Miller*, 254 Or App 514, 528, 295 P3d 158 (2013) (holding that, because the three controlled buys occurred at an undisclosed location other than defendant's residence, there was not the "necessary factual nexus" to establish that it was more likely than not that drug-related evidence would be found in the residence). Nor was there any evidence in the record that indicated that defendant stored heroin in his pickup, or that, based on an officer's training and experience, drugs are often kept in vehicles by persons trafficking in controlled substances. *Cf. id.* at 529 (holding that affidavit was sufficient to establish probable

cause to search a vehicle because the "defendant drove his black Hyundai sedan to each of the controlled drug buys" *and* that, based on the officer's "training and experience, [i]tems of value including drugs * * * are often kept in automobiles by persons trafficking in control[led] substances").

Rather, we agree with the state that the moment that probable cause "crystallized" is when defendant texted the CP to say that he was on his way to the arranged drug buy, which was less than an hour from the search of defendant's pickup. At that point, it was more likely than not, based on the text communications, the reliability of the CP, and that defendant regularly delivered heroin to the CP in his pickup, that police would discover evidence of controlled substances in defendant's pickup when they stopped it. Additionally, given that, "as currently constructed, Oregon's automobile exception does not require the state to establish the unavailability of a telephonic warrant," *McCarthy*, 302 Or App at 92, the state was not obligated to show that the police could not have obtained a warrant before the search of defendant's pickup within that window of time. There was no intentional delay by the police.

We turn to defendant's argument that the police "manufactured" the situation allowing them to take advantage of the exigency, *viz.*, that they controlled the circumstances when they would stop defendant's pickup, and, therefore, those circumstances obviated the exigency underlying the automobile exception. It is true that the LINT operation went as planned, but it does not follow that the success of the operation meant that the police were required to obtain a warrant *before* their anticipated engagement with defendant. Implicit in defendant's argument is that the police could have obtained an anticipatory warrant—a warrant that would have been based on probable cause to believe that defendant would have evidence of a drug crime at a future time and place. *See United States v. Grubbs*, 547 US 90, 96, 126 S Ct 1494, 164 L Ed 2d 195 (2006) (holding that, under the Fourth Amendment, an anticipatory warrant is permitted if the magistrate determines "(1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed") (emphases in original); *id.* at 94 (quoting

Wayne R. LaFave, 2 *Search and Seizure* § 3.7(c) at 398 (4th ed 2004) ("An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'"). However, assuming without deciding that an anticipatory warrant is permitted under Article I, section 9, just as the automobile exception does not require the state to show the unavailability of a telephonic warrant, the exception as it is currently understood does not require the state to show that it could not have obtained an anticipatory warrant.

To be sure, we recognize the dissonance between a planned operation designed to ensnare a suspect at a particular time and place in order to take advantage of the automobile exception, like the one here, and the fact that the automobile exception to the warrant requirement is an *exigent circumstances* exception. That is, we typically view an exigency as an *unforeseen* circumstance that requires *urgent action*, and, the orchestrated method used by law enforcement in this case—an apparently regular practice in Lincoln County—does not have those qualities, which are ordinarily present in the type of traffic stop to which the automobile exception is intended to apply. Nevertheless, as we explained in *McCarthy*, the Supreme Court has made clear the *per se* nature of the automobile exception, and we consequently cannot say that the police officers in this case were unjustified in planning the operation and relying on the automobile exception in the manner that they did, without having an obligation to seek a warrant.

Affirmed.